IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SANTOIN RUSSELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 19-cv-963-DWD |
| | ) |
| | ) |
| JACKLYN LASHBROOK, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Santoin Russell, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Stateville Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while at Menard Correctional Center ("Menard"). Plaintiff claims Defendants failed to protect him from an assault on the yard in violation of the Eighth Amendment. Defendant Jacqueline Lashbrook has filed a Motion for Summary Judgment (Doc. 15) on the issue of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. § 1997e(a).

### BACKGROUND

Plaintiff alleges that he was stabbed multiple times by other inmates in the prison yard at Menard on September 6, 2017. He claims that the other inmates were only able to bring their homemade metal knives into the yard was because Lashbrook had removed metal detectors and was no longer requiring pat-down searches. The day after the

1

incident, Plaintiff was moved to Lawrence Correctional Center ("Lawrence"). Following the Court's initial screening Order (Doc. 7), Plaintiff proceeds on the following count:

**Count 1:** **Defendant Lashbrook failed to protect Plaintiff from an assault in violation of the Eighth Amendment.**

Defendant Lashbrook filed a motion for summary judgment asserting that Plaintiff failed to adequately exhaust his administrative remedies as to her, because she is not named or adequately identified in any of the relevant grievances. (Doc. 16). Plaintiff filed a timely response. (Doc. 25).

### FINDINGS OF FACT

The Court reviews the following relevant grievances contained in the record:[1]

**November 2, 2017**

Plaintiff submitted at least two grievances dated November 2, 2017. The first he submitted as an emergency grievance to Lawrence. (Doc. 1, pp. 12-13). (the "Prison Grievance"). In it, he states that he was stabbed with metal knives at Menard, that "[m]ore inmates at Menard carry metal knives due the removal of metal detector in front of [the] building where inmates lived[,]" and that "line movements toward the yards were not stopped for pat down searches." (*Id.*). He then complained about aspects of the medical care he received at Menard and Lawrence. (*Id.*). His requested relief was that proper documentation be made of his injuries, as well as x-rays and a follow-up of a

---

[1] Plaintiff indicates that he filed two additional grievances regarding the September 6 incident. He states that he filed one on September 7, upon arrival at Lawrence. (Doc. 25, p. 24). No copy of this grievance is in the record. He also states he filed a grievance dated October 15, 2017. (*Id.*, p. 26). He does not allege that either mention the metal detectors or pat-down procedures, which is consistent with the copy of the October 15 grievance he submitted. As such, neither of these grievances are relevant to the question at hand.

2

tuberculosis test. (*Id.*). The grievance was reviewed on November 7, 2017 and deemed not to be an emergency. (*Id.*, p. 12). A counselor's response, dated November 30, 2017, stated that he was being treated within community standards of care and that there was "no relief requested documented on grievance." (*Id.*). It is unclear from the record whether he received this response. The Cumulative Counseling Summary suggests that the Prison Grievance was forwarded to a grievance officer on December 13, 2017. (Doc. 25, p. 48). However, there is no indication that it was responded to in the Cumulative Counseling Summary. (*Id.*, pp. 46-48).

At the same time he submitted the Prison Grievance, Plaintiff hand-copied it and sent it directly to the Administrative Review Board ("ARB") as an emergency grievance (the "ARB Grievance"). (Doc. 25, pp. 4, 9; Doc. 16-4, pp. 3-4). Plaintiff explains he did this because he and the other inmates at Lawrence were not receiving responses to their grievances. (Doc. 25, p. 31). He states that the purpose is for the filing "just to be filed and copied[.]" (*Id.*). The content of the ARB Grievance is substantially identical to the Prison Grievance. The ARB Grievance was responded to on November 13, 2017 with the annotation that it was incomplete on the medical issues (no copy of the original grievance or Response to Offender's Grievance, was misdirected as to medical care at his current facility, and that there was no information on another issue. (Doc. 16-4, p. 1). There is no indication that the ARB Grievance was further pursued.

Finally, Plaintiff submitted a number of letters and grievances to the ARB regarding prison staff's failure to give timely responses to his prior grievances, including the Prison Grievance. (Doc. 25, pp. 33-45). The ARB responded on June 26, 2018, asking

3

for copies of the Responses to Offender's Grievances.  (*Id.*, p. 45).  There is no indication that Plaintiff pursued this portion of the matter any farther.

Pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), the Court held a hearing on the issue of exhaustion on March 22, 2021.

## CONCLUSIONS OF LAW

**A. Legal Standards**

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a).  In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Pavey*, 544 F.3d at 742.  After hearing evidence, finding facts, and determining credibility, the court must decide whether to allow the claim to proceed or to dismiss it for failure to exhaust.  *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018)

4

The Prison Litigation Reform Act provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey*, 544 F.3d at 740. "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024.

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, et seq. (2017). The regulations first require an inmate to file his grievance with his counselor within 60 days of the discovery of an incident, occurrence, or problem that gave rise to the grievance. 20 ILL. ADMIN. CODE § 504.810(a). Administrative regulations require the grievance "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c). If the names of the individuals are unknown to the offender, he can still file the grievance but "must include as much descriptive information about the individual as possible." *Id.* Further, the Seventh Circuit has held that an inmate is required to provide enough information to serve a grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).

5

If the complaint is not resolved through the counselor, the grievance may be submitted to a grievance officer, who reports his or her findings and recommendations in writing to the CAO. 20 ILL. ADMIN. CODE § 504.830(e). The CAO then provides the inmate with a written decision on the grievance. *Id.*

If the inmate is not satisfied with the CAO's response, he can file an appeal with the IDOC Director through the ARB. 20 ILL. ADMIN. CODE §504.850(a). The ARB must receive the appeal within 30 days of the date of the CAO's decision. *Id.* The inmate must attach copies of the responses from the grievance officer and CAO to his appeal. *Id.* The ARB submits a written report of its findings and recommendations to the Director, who then makes a final determination. 20 ILL. ADMIN. CODE § 504.850(d), (e).

An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. 20 ILL. ADMIN. CODE § 504.840. If it is determined that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is handled on an emergency basis, which allows for expedited processing of the grievance. *Id.* If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 ILL. ADMIN. CODE § 504.840(c).

A prisoner must submit grievances directly to the Administrative Review Board when grieving (among other things) "[o]ther issues that pertain to a facility other than the facility where the offender is currently assigned, excluding personal property and

medical issues." 20 ILL. ADMIN. CODE § 504.870(a)(4). The ARB then processes the grievance.

Though the Seventh Circuit requires strict adherence to the exhaustion requirement, an inmate is required to exhaust only those administrative remedies that are available to him. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Administrative remedies become "unavailable" when prison officials "do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Id.*

**B. Analysis**

Based on the record as submitted, Plaintiff has failed to exhaust his claims as to Lashbrook. First, the Prison Grievance was not the correct vehicle for grieving about any non-property, non-medical issue at Menard, because he was at Lawrence at the time. See 20 ILL. ADMIN. CODE § 504.870(a)(4). Second, there are questions of the procedural adequacy of the ARB Grievance. The ARB Grievance was not really a grievance at all in Plaintiff's own eyes—as he noted in his accompanying correspondence, it was an extra copy sent as a hedge against the prison failing to respond to the Prison Grievance (Doc. 16-4, p. 2). The ARB's response does not address anything regarding the metal detectors or pat-down procedures at Menard, but it does request additional information and documents regarding the other portions of the grievance, which Plaintiff did not respond to directly. (*Id.*, p. 1). That suggests Plaintiff essentially abandoned the ARB Grievance as he pursued the Prison Grievance.

7

Even if Plaintiff was excused from fully pursuing the ARB Grievance by the ARB's lack of response on the metal detector and pat-down issues, the content of the ARB Grievance was still inadequate to exhaust his administrative remedies. The basic concept is that a prisoner must adequately exhaust his administrative remedies as far as they are available to him. A lack of response does not make any grievance he filed retrospectively adequate; it merely excuses his failure to take any further steps from that point that would normally be required. The Ninth Circuit expressed the concept well in articulating a standard for unavailability due to improper screening: "[A] prisoner must show that he attempted to exhaust his administrative remedies but was thwarted by improper screening. In particular, the inmate must establish (1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations." *Sapp v. Kimbrell*, 623 F.3d 813, 823–24 (9th Cir. 2010). While the second portion is inapplicable under Seventh Circuit law, the first is a common-sense and useful statement applicable to cases like this, where a grievance was filed but received no response. As such, the Court will adopt it. See also *Russell v. Wexford Health Sources, Inc.*, No. 3:19-CV-681-MAB, 2021 WL 793994, at *3 (S.D. Ill. Mar. 2, 2021); *Walker v. Butler*, No. 19-CV-0446-SPM, 2021 WL 857355, at *6 (S.D. Ill. Mar. 8, 2021).

Plaintiff's November 2, 2017 grievances were insufficient to meet the standards for proper exhaustion. There is no question that Plaintiff did not name or describe Lashbrook (or anyone else) in connection with the removal of the metal detector or the lack of pat-

8

downs, thereby failing to satisfy the letter of the Administrative Code requirements. The grievances also fail to fulfill the spirit of the exhaustion requirement by failing to adequately alert IDOC of his allegation that this was problem that needs resolving. The exhaustion requirement's primary purpose is to alert the state to the problem and invite corrective action. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013) (*quoting Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004)). The thrust of Plaintiff's relevant grievances goes to the care (or lack thereof) he received after being stabbed, and his desire for treatment and documentation of his injuries, including whatever pictures Menard took. The content of the November 2, 2017 grievances is insufficient to alert prison officials that he was grieving the removal of the metal detector and lack of pat-down searches. As such, he failed to adequately exhaust his administrative remedies.

## DISPOSITION

The Motion for Summary Judgment on the issue of exhaustion filed by Defendant Lashbrook (Doc. 15) is **GRANTED**. This case is dismissed without prejudice for failure to exhaust. The Clerk of Court is **DIRECTED** to enter judgment accordingly and close the case.

**IT IS SO ORDERED.**

DATED: 3/26/2021

_____
David W. Dugan
United States District Judge